| | | |
|---|---|---|
| **JOHN SASTRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV215SNLJ**[1] |
| | ) | |
| **THE CITY OF CRESTWOOD, ET. AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff has filed this multicount action alleging that his constitutional rights were violated when he was arrested and incarcerated without probable cause (twice).  He asserts a §1983 claim for unreasonable and unlawful seizure (false arrest) in violation of his Fourth and Fourteenth Amendment rights (Count I); a §1983 claim for false imprisonment in violation of his Fourth and Fourteenth Amendment rights (Count II); a §1983 claim for civil conspiracy to violate his civil rights in violation of his Fourth and Fourteenth Amendment rights (Count III); and a Missouri state common law claim for civil conspiracy in violation of his Fourth and Fourteenth Amendment rights (Count IV).  All four of his counts are brought against all of the defendants: The City of Crestwood (hereafter referred to as either "the City" or "Crestwood"), Roy Robinson (Mayor of Crestwood), Mike Paillou (Chief of Police of Crestwood), Kevin McFarland (a police officer with the Crestwood Police Department), and Michael Akin (a police officer with the Crestwood Police Department).  This matter is before the Court on the parties' cross-motions for summary judgment: plaintiff's motion for summary judgment [16] and the defendants' joint motion for summary judgment [19].[2]  This cause of action was removed from the Court's trial docket of June 20, 2011.

---

[1]The pleadings all read "4:10cv215CDP".  Upon the retirement of the Honorable Donald J. Stohr, this case was reassigned to this Court.  *See*, Administrative Order [15], filed January 5, 2011.  Thus, all pleadings, including court orders, shall bear the case number of "4:10CV215SNLJ".

[2]Plaintiff seeks summary judgment as to Counts I and II only; defendants seek summary judgment as to all counts.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); see, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) citing Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, the non-moving party must

support his/her allegations with sufficient probative evidence to permit a finding in the non-moving party's favor based upon more than mere speculation, conjecture, or fantasy.  Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").  Thus, the nonmoving party cannot rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d. 953, 957 (8th Cir. 1995).  It is for the Court to determine whether the non-moving party has submitted "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture or fantasy."  Gregory v. The City of Rogers, Ark., 974 F.2d. 1006, 1010 (8th Cir. 1992) *quoting* Barnes v. Arden Mayfair, Inc., 759 F.2d. 676, 681 (9th Cir. 1985).  "A mere scintilla of evidence is insufficient to avoid summary judgment.  If the evidence the [non-moving party] puts forward `is merely colorable' or `is not significantly probative', the [moving party] is entitled to summary judgment as a matter of law.  Gregory, at 1010 *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50, 252.

Central to both summary judgment motions is the issue of the plaintiff's arrests; i.e. whether either or both of his arrests were done without probable cause.  Plaintiff asserts that his arrests were made without probable cause because a domestic "Order of Protection" was not in effect at the time of the arrests; therefore, he had not engaged in any criminal activity which would have given rise to probable cause for his arrests.  He further argues that 1) if the arresting officers (defendants Akin and McFarland) had believed him, instead of the complaining party (plaintiff's ex-wife Melissa Sastry); and 2) checked further as to the circumstances regarding the alleged "Order of Protection", they would have known that the "Order of Protection" had been cancelled and replaced by a civil court order ("Interim Order").  Plaintiff further contends that the City of Crestwood is liable because defendant Paillou "condoned and supported" the arrests and

the Crestwood Police Department does not have a policy of regarding training on Adult Abuse Law[3].

Defendants contend that at the time of the arrests, both arresting officers believed that an "Order of Protection" was in effect based upon information received from their dispatcher and by the complainant, and that plaintiff's conduct toward Ms. Sastry was in violation of said order. Thus, they contend that based upon their reasonable belief of the existence of the said order, they had probable cause to make the arrests. Defendants further contend, that even if their belief in the existence of an "Order of Protection" was in error, defendants Akin and McFarland still had probable cause to make the arrests for violations of Missouri law and Crestwood ordinances regarding harassment and abuse. Furthermore, defendants contend that the conspiracy claims, cannot extend to defendants City, Paillou, and Robinson because plaintiff has failed to 1) establish any underlying constitutional violations by defendants Akin and McFarland and/or 2) set forth any evidence of a "meeting of the minds" to violate plaintiff's constitutional rights. Finally, defendants contend that plaintiff cannot establish a claim for municipal liability against the City because he has failed to set forth any evidence of any "policy or custom" which was the moving force behind plaintiff's arrests.

Before addressing the primary legal issues present in the instant motions, the Court must first address two (2) other matters. Firstly, the plaintiff appears to request that the Court strike most, if not all, of the defendants' Statements of Material Facts because the defendants are "attempt[ing] to depict Plaintiff in a negative light by pleading allegedly scandalous matters related to a relationship between Plaintiff and his ex-wife, which have nothing to do with this action." Plaintiff's Response [29], pg. 2. He seeks to strike said statements because they are immaterial, impertinent, irrelevant, and scandalous in nature.

The Court has reviewed the defendants' Statements of Material Facts. It will not strike said statements because the plaintiff does not like the "light" in which the statements cast him in.

_____

[3]The Court presumes that plaintiff is referring to Missouri's Adult Abuse Law; however, he fails to provide any specific citation. In light of the defendants' pleadings and the Court's independent research, the Court will presume that plaintiff is referring to §§455.005 - 455.085 R.S.Mo.

The statements are properly supported by the record, whether or not the plaintiff agrees with the record. A few statements, such as No. 82 "Probable cause existed for Defendant Officer Akin to arrest Plaintiff for harassing Melissa Sastry on January 29, 2009 whether or not an Order of Protection existed on that date." do state a legal conclusion; thus, such statements will simply not be considered by the Court. Furthermore, the relationship of plaintiff and his ex-wife, as known by the arresting officers at the time of the arrests, is germane to the Court's analysis of whether probable cause existed at the time of these arrests. Finally, any motion to strike should be filed as an independent motion, and not simply as part of the plaintiff's response to the Defendants' Statement of Material Facts. Thus, plaintiff's "request" to strike the Defendants' Statements of Material Facts will be denied.

Secondly, the Court will, *sua sponte*, dismiss defendant Roy Robinson with prejudice from this cause of action. Nowhere in the plaintiff's complaint, or in his summary judgment motion, or in any responsive pleading does he set forth any allegation of unconstitutional conduct by defendant Robinson. Nowhere is defendant Robinson even mentioned by name. Plaintiff simply has not set forth any factual or legal reason to hold defendant Robinson liable in this case. It appears that plaintiff simply wants to hold defendant Robinson liable because he was the Mayor at the time of the arrests. Plaintiff cannot establish §1983 liability based upon the doctrine of *respondeat superior*. Givens v. Jones, 900 F.2d. 1229, 1233 (8th Cir. 1990); Wilson v. City of Little Rock, 801 F.2d. 316, 322 (8th Cir. 1986); Martin v. Sargent, 780 F.2d. 1334, 1338 (8th Cir. 1985). Claims asserted under §1983 must alleged personal involvement by the named defendant. Liability under §1983 "requires a causal link to, and direct responsibility for, the alleged deprivation of rights. Madewell v. Roberts, 909 F.2d. 1203, 1208 (8th Cir. 1990). A defendant will not be held liable under §1983 unless he or she was personally involved in causing the deprivation of a constitutional right. Triplett v. Azordegan, 570 F.2d. 819, 823 (8th Cir. 1978); Jackson v. Calcaterra, 2008 WL 1967502, *7 (E.D.Mo. May 1, 2008) *citing* Triplett v. Azordegan, *supra.* Given that plaintiff has not set forth any facts indicating that defendant Robinson was personally involved in the arrest, incarceration, or in any "conspiracy" to arrest and/or incarcerate plaintiff, such claims must be dismissed against defendant Robinson.

In this same vein, to the extent that plaintiff's claims in Count I and II against defendant Paillou is based upon the actions of the police officers he supervised (defendants Akin and McFarland), these claims must also be dismissed. Again, plaintiff cannot establish liability under Counts I and II based upon the doctrine of *respondeat superior*. Supervisory personnel cannot be held liable under §1983 absent "a showing of direct responsibility for the improper action" or "personal involvement of the officer being sued." Harris v. Pirch, 677 F.2d. 681, 685 (8th Cir. 1982)(citations omitted); *see also*, Boyd v. Knox, 47 F.3d. 966, 968 (8th Cir. 1995). Plaintiff has failed to set forth any facts demonstrating that defendant Paillou was directly involved in the making of the arrests or in the incarcerations of the plaintiff. In order to prevail on a §1983 claim, a plaintiff must allege and prove that a defendant was personally involved in or had direct responsibility for the incidents that plaintiff asserts resulted in the alleged deprivation of his constitutional rights. Briscoe-Wade v. Carnahan, 149 F.Supp.2d. 891, 900 (E.D.Mo. 2001). Paillou's "after-the-fact" support of his officers' decisions is not the type of "personal involvement" required for making a supervisor liable for the alleged unconstitutional acts of his/her subordinates. Defendants' Exhibit K - Deposition of Michael Paillou, pgs 19-20. Thus, Counts I and II are dismissed with prejudice as to defendant Paillou.[4]

The following findings of material fact by the Court are derived from the evidentiary record submitted by the parties.[5] Plaintiff and Melissa Sastry were married in 2005. In January

---

[4]Plaintiff's only connection to defendants Robinson and Paillou are through a voice mail message and an alleged encounter his parents may have had with personnel at the Crestwood Police Department. Both of these events occurred after the events giving rise to this lawsuit. Plaintiff testified that he left one or more voice mail messages for defendant Paillou regarding alleged incidents wherein Ms. Sastry kicked his car door at the Crestwood Police Department parking lot, and brought his dog to the police station to give it back to the plaintiff. Plaintiff further testified that he never received any phone call back from defendant Paillou. Plaintiff's Deposition, pgs. 41-42. He further testified that his parents told him that they were treated "rudely" by the unidentified personnel at the Crestwood Police Department. Plaintiff's Deposition, pgs. 42-45. He further speculates that Ms. Sastry got personal information from "an elected official with the City of Crestwood". Plaintiff's Deposition, pgs. 48-49. Again, such conjecture and lack of any objective evidence demonstrating personal involvement by either defendant Paillou or defendant Robinson in the subject arrests and incarceration is not enough to establish liability under §1983.

[5]The Court will cite to specific exhibits when necessary. In certain instances, the parties filed the same exhibits. The Court will cite to only one (1) of the exhibits for purposes of judicial efficiency and clarity. The Court's choice of the cited exhibit in no way reflects any

2008, Melissa Sastry (plaintiff's ex-wife and the complainant in this case giving rise to the disputed arrests) contacted the Webster Groves Police Department to make a complaint of spousal abuse against plaintiff. She testified that she told the Webster Groves Police Department that plaintiff had physically assaulted her and locked her and their children out of their home. Defendants' Exhibit A - Deposition of Melissa Sastry, pg. 17. This was not the first incident of physical abuse by the plaintiff, but it was the first incident in which Ms. Sastry notified the Webster Groves Police Department.[6] Melissa Sastry Deposition, pgs. 17-19. Although arrested, plaintiff was ultimately released without being charged, and later had the arrest record expunged. Plaintiff's Exhibit P3 - Deposition of John Sastry, pgs. 52-55. The Sastrys separated later in 2008 and Melissa Sastry moved to Crestwood, while plaintiff remained in the Webster Groves residence. The parties then initiated divorce proceedings in St. Louis County Circuit Court.

The parties were not unknown to the Crestwood Police Department. Starting in September 2008, Melissa Sastry began working at the Mobil On the Run gasoline and convenience store in Crestwood. The Crestwood Police Department routinely fuels its police cars there. She encountered the police officers while performing her job duties but doesn't have a personal relationship with any Crestwood police officer outside of her employment. Melissa Sastry Deposition, pgs. 6, 9-11, 13. Furthermore, pursuant to a court order, plaintiff and Ms. Sastry would exchange custody of their children at the Crestwood Police Department. Melissa Sastry Deposition, pg. 15; Plaintiff's Deposition, pg. 20.

After plaintiff and Ms. Sastry separated, orders of protection were filed by both of them. On January 16, 2009, Ms. Sastry obtained an "Order of Protection" from the St. Louis County Circuit Court against the plaintiff. Defendants' Exhibit C. This "Order of Protection" prohibited plaintiff from abusing, harassing, stalking or threatening Ms. Sastry and one of her sons. On January 29, 2009 plaintiff and Ms. Sastry appeared in state court for a hearing in their pending divorce litigation. The January 16th Order of Protection was allegedly cancelled. Defendants'

particular bias on the part of the Court.

[6]At that time, both Ms. Sastry and the plaintiff resided in the marital home in Webster Groves, Missouri.

Exhibit C.  In its place, the state court entered an "Interim Order".  Defendants' Exhibit D.  This "Interim Order" is set forth on a Circuit Court of St. Louis County form and is signed by attorneys for the parties, and the presiding judge.  The Interim Order sets out a visitation schedule for plaintiff with the two (2) children he and Ms. Sastry had together.[7]  The Interim Order also clearly prohibits the plaintiff from abusing, harassing, stalking, or threatening Ms. Sastry.  Defendants' Exhibit D.  Plaintiff believed, based upon her attorney's advice, that the Interim Order was essentially the same as the Order of Protection because "it was worded exactly the same, and it was for the same purpose."  Melissa Sastry Deposition, pg. 9; 27-29.

Normally, copies of *ex parte* orders of protection and/or full orders of protection are faxed to the local law enforcement agency wherein the moving party resides and the local law enforcement agency responsible for maintaining the Missouri uniform law enforcement system (MULES) or any other comparable law enforcement system the day of issuance. §455.040.3 R.S.Mo.  The Crestwood Police Department received their copies of such orders via either the St. Louis County Sheriff's Department or the St. Louis City Sheriff's Department, depending upon whether the movant resides.  Defendants' Exhibit K - Deposition of Michael Paillou, pg.13.  The same goes for the termination of any such order. §455.040.3 R.S.Mo. In Crestwood, the orders (and notices of termination) are faxed to the Dispatch Center at the Crestwood Police Department and kept in a binder.  Paillou Deposition, pgs. 13-14

On the evening of January 30, 2009, plaintiff had their two (2) children at his residence in Webster Groves.  Plaintiff called Ms. Sastry to come pick up the children because they were not happy being at his residence.  Plaintiff's Exhibit P5- Plaintiff's Statement, dated January 31, 2009.  Ms. Sastry agreed to pick up the children but first arranged for someone from the Webster Police Department to meet her at plaintiff's house.  Melissa Sastry Deposition, pgs. 7-8; Defendants' Exhibit E - Melissa Sastry Victim Statement, dated January 30, 2009.  Ms. Sastry wanted a police officer at the plaintiff's house when she picked up the children because plaintiff

---

[7]Ms. Sastry had four (4) other children from prior relationship(s).  Melissa Sastry Deposition, pg. 16.

had been verbally abusive over the phone when he called her to pick up the children. Defendants' Exhibit F- Police Report (including Statement of Defendant Akin).

Ms. Sastry arrived to pick up the children, and unidentified Webster Groves police officers met her at plaintiff's house. Defendants' Exhibit E; Plaintiff's Exhibit P5. Shortly after leaving with the children, Ms. Sastry received an irate, threatening phone call from plaintiff. She called the Crestwood Police Department to report plaintiff's threatening phone call. She was told to call the Webster Groves Police Department to report the call also. Melissa Sastry Deposition, pgs 8-9.

Defendant Akin was on duty, at the Crestwood Police Department, the evening of January 30, 2009. Defendant Akin was apprised of Ms. Sastry's complaint and went to her home to discuss the matter with her. Melissa Sastry Deposition, pg. 9; Defendants' Exhibit F; Defendants' Exhibit G - Deposition of Michael Akin, pgs. 8-9. Dispatch had informed Akin that there was an "ex parte order" against the plaintiff in effect at that time. Akin Deposition, pgs. 7-9, 16; Defendants' Exhibit F. Ms. Sastry informed defendant Akin that plaintiff had made threatening, abusive phone calls to her and she was fearful of physical harm by the plaintiff. Melissa Sastry Deposition, pgs. 9, 24-25; Akin Deposition, pgs. 9, 19; Defendants' Exhibit F. Ms. Sastry was "visibly shaking and crying" as she told defendant Akin of the threatening nature of plaintiff's phone calls. Melissa Sastry Deposition, pg. 24; Akin Deposition, pg. 19; Defendants' Exhibit F. She showed defendant Akin a copy of the Interim Order. Akin Deposition, pgs. 8, 16, 35, 38-41; Defendants' Exhibit F.

Defendant Akin returned to the Crestwood Police Department wherein Dispatch showed him a copy of the January 16, 2009 Order of Protection and the Interim Order. Akin Deposition, pgs. 8, 41. Dispatch did not have any documentation showing that any "Order of Protection", including the January 16, 2009 order, had been cancelled or set aside. Akin Deposition, pgs. 8-9; Defendants' Exhibit C. Ms. Sastry came down later that evening to the Crestwood Police Department to give her written statement. Melissa Sastry Deposition, pgs. 9, 22-24. In her written statement, Ms. Sastry attests that when plaintiff had initially called her to pick up their children, he had been verbally abusive. She further attests that plaintiff was "screaming" at her

9

about having police officers at his house when she came to get the children, and that he would "flip her world upside down" and that "if you think things are bad now, you'll get yours." Defendants' Exhibit E. She continues to state that plaintiff made a threat of some type of criminal action against her and a male friend based upon their friendship and her friend's contact with their son. Defendants' Exhibit E.

Based upon Ms. Sastry's demeanor, her written statement, and his belief that the Interim Order was an order of protection, defendant Akin believed that plaintiff had violated a court order preventing him from harassing and threatening Ms. Sastry. Defendant Akin further knew that plaintiff had previously been arrested by the Webster Groves Police Department for domestic assault. Akin Deposition, pgs. 20-21. Given what he knew at the time of Ms. Sastry's complaint, Akin believed that defendant had violated a valid court order of protection and was subject to arrest pursuant to state law and Crestwood's municipal ordinance regarding domestic violence and harassment. Akin Deposition, pgs. 18, 26, 27, 38-39, 41-42, 45-46.

Defendant Akin put out a "wanted" on the plaintiff and contacted the desk sergeant at the Webster Groves Police Department to pick plaintiff up and transport him to the Crestwood Police Department. Akin Deposition, pgs. 10-11, 23, 24-26; Defendants' Exhibit F. The "wanted" was for violating an "ex parte order". Defendants' Exhibit F. The Webster Groves police apprehended the plaintiff at his residence at approximately 12:30 a.m. on January 31, 2009 and taken to the Crestwood Police Department. Akin Deposition, pgs. 24-25; Plaintiff's Deposition, pg. 10. Upon being taken to the Crestwood Police Department, plaintiff was transferred into the custody of defendant Akin. Plaintiff's Deposition, pgs. 10-11. This was the first time plaintiff had ever had contact with defendant Akin. Plaintiff's Deposition, pg. 11.

There is a dispute as to the exact nature of the conversation between plaintiff and defendant Akin. Plaintiff contends that he told Akin that there was no "Order of Protection" in effect at that time. Plaintiff's Deposition, pg. 11. Defendant Akin cannot recall whether or not plaintiff told him that there was no "Order of Protection" in effect at that time. Akin Deposition, pgs. 13-14, 18, 30. Plaintiff was booked for violation of an "ex parte order" and he voluntarily made a verbal and written statement concerning his version of the events that occurred on

10

January 30, 2009 between him and Melissa Sastry. Plaintiff's Deposition, pgs. 12-17; Defendants' Exhibit F. Plaintiff denied making any verbal threats against Melissa Sastry. Plaintiff was held overnight at the Crestwood Police Department and released from custody the following morning at 9:56 a.m. Defendants' Exhibit F.

Defendant Akin applied for an arrest warrant on the plaintiff for violation of an Order of Protection with the St. Louis County Prosecuting Attorney's Office. Akin Deposition, pgs. 33-34. For the first time, he was informed that there was no "Order of Protection" in effect at that time; that the paperwork he was given by Dispatch and Ms. Sastry was simply a court-ordered agreement between the parties. The Prosecuting Attorney's Office informed Akin that there was only evidence supporting a municipal harassment charge. Akin Deposition, pgs. 34-35. Plaintiff was ultimately charged with a misdemeanor violation. Defendants' Exhibit F.

On January 21, 2010 plaintiff obtained a Judgment and Order of Expungement of Arrest Records regarding his arrest of January 31, 2009. Plaintiff's Exhibit P8.

On April 21, 2009 Ms. Sastry was at her place of employment, Mobil On the Run, but was not on duty that day. She was there with her children getting gas for her car. Melissa Sastry Deposition, pg. 26; Defendants' Exhibit J - Victim Statement of Melissa Sastry. One of her sons was on a cellphone talking with the plaintiff. Melissa Sastry Deposition, pg. 26; Defendants' Exhibit J. As Ms.Sastry was finished her purchase and was pulling out of the gas station, the plaintiff pulled up in his car. Plaintiff began waving and shaking his fists at her and screaming obscenities. Ms. Sastry pulled out of the gas station and started down Big Bend Blvd with the plaintiff following her. Melissa Sastry Deposition, pg. 26; Defendants' Exhibit J. Plaintiff pulled up next to Ms. Sastry still screaming obscenities at her. Ms. Sastry believed that plaintiff was driving in an irrational and threatening manner and was attempting to run her off the road. Melissa Sastry Deposition, pg. 26-27; Defendants' Exhibit J. Ms. Sastry called the Crestwood Police Department to report this incident. Melissa Sastry Deposition, pg. 12.

On April 21, 2009, following Ms. Sastry's phone call, defendant McFarland was dispatched to her residence. Defendants' Exhibit H - Deposition of Kevin McFarland, pg. 7. Ms. Sastry relayed to McFarland what had transpired with the plaintiff and showed him her copy

of the Interim Order. McFarland Deposition, pgs. 7; Defendants' Exhibit I - Police Report

(including Statement of defendant McFarland). Ms. Sastry appeared to defendant McFarland to

be upset by the incident involving the plaintiff. McFarland Deposition, pgs. 14, 28.

Defendant McFarland returned to the Crestwood Police Department where he obtained a

copy of the Interim Order from a report that had been filed in January 2009 by defendant Akin.

Defendants' Exhibit I; McFarland Deposition, pgs. 25-26. Defendant McFarland returned to Ms,

Sastry's residence and obtained a written statement from her. Based upon Ms. Sastry's written

statement and the Interim Order defendant McFarland believed that plaintiff had violated a court

order by harassing Ms. Sastry within the City of Crestwood, and that such conduct further

constituted violation of state law on domestic violence. McFarland Deposition, pgs. 8, 12, 14.

On April 22, 2009 Defendant McFarland had Dispatch contact the Webster Groves Police

Department to meet defendant McFarland near plaintiff's residence for an "arrest attempt".

McFarland Deposition, pg. 8, Defendants' Exhibit I. While waiting for a Webster Groves police

officer to meet him, defendant McFarland encountered the plaintiff. Plaintiff Sastry was out

walking his dog and approached McFarland's police car. Plaintiff's Deposition, pgs. 28-29;

McFarland Deposition, pg. 9; Defendants' Exhibit I. Both men identified themselves and

McFarland informed plaintiff that he was there to arrest him on a court order violation.

Plaintiff's Deposition, pg. 29; Defendants' Exhibit I.

Plaintiff was allowed to return to his home to leave his dog. Plaintiff's Deposition, pgs.

29-30; Defendants' Exhibit I. While in the house, plaintiff retrieved some paperwork, including

a copy of the same Interim Order, which he believed would prove to defendant McFarland that he

had not violated any court order. Plaintiff's Deposition, pgs. 30-31; McFarland Deposition, pgs.

11, 21. Plaintiff was placed in handcuffs and transported to the Crestwood Police Department.

Plaintiff's Deposition, pgs. 31-32; Defendants' Exhibit I.

Plaintiff arrived at the police station at approximately at 7:30 p.m. He was booked,

fingerprinted, and photographed. He verbally conveyed to McFarland that he had not harassed

Ms. Sastry and was not in violation of any court order of protection. Plaintiff waived his

Miranda rights and made a written statement of his version of the incident in question. Plaintiff's

Deposition, pgs. 25-26; Defendants' Exhibit I. Plaintiff was released at approximately two (2) hours later pending application of a warrant for misdemeanor contempt of court . Plaintiff's Deposition, pg. 34, McFarland Deposition, pg. 13; 17; Defendants' Exhibit I.

Although McFarland wanted to apply for a warrant from the St. Louis County, he was advised by his superiors not to do so. McFarland Deposition, pgs. 18-19; Paillou Deposition, pgs. 17-18.

On January 21, 2010 plaintiff obtained a Judgment and Order of Expungement of Arrest Records regarding his arrest of April 22, 2009. Plaintiff's Exhibit P13.

The Crestwood Police Department has never received any disciplinary complaints about either defendant Akin or defendant McFarland. Paillou Deposition, pg. 16

Crestwood police officers have jurisdiction to make arrests for state law violations outside the municipal borders of the City of Crestwood. Paillou Deposition, pg. 15.

Under the ordinances of the City of Crestwood, Section 16-22, a person commits the ordinance violation of harassment if, for purposes of frightening, threatening, disturbing or annoying another person, he/she makes a telephone call and threatens to (1) commit a crime, or (2) uses profane or coarse language offensive to one of average sensibility, or (4) makes repeated telephone calls so as to constitute a nuisance or annoyance or disturbance of the peaceful or quiet enjoyment of a residence or place of business. Defendants' Exhibit L - Certified Copy of the Crestwood Municipal Code, §16-22 (in pertinent part)..

Under Missouri law, a person commits the crime of harassment, constituting a class A misdemeanor, if he or she (1) knowing communicates a threat to commit any felony to another person and in so doing, frightens, intimidates, or causes emotional distress to such other person; or (2) when communicating with another person, knowingly uses coarse language offensive to one of average sensibility and thereby puts such person in reasonable apprehension of offensive physical contact or harm; or (5) knowingly makes repeated unwanted communication to another person; or (6) without good cause shown engages in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause such person to be frightened,

intimidated, or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person. §565.090 R.S.Mo. (in pertinent part).

Under Missouri's Adult Abuse Act and its provisions, "Abuse" is defined as including, but not limited to "the occurrence of any of the following acts, attempts or threats against a person who may be protected pursuant to sections 455.010 to 455.085", such acts being "harassment" defined as follows:

> "engaging in a purposeful or knowing course of conduct involving more than one incident that alarms or causes distress to another adult and serves no legitimate purpose. The course of conduct must be such as would cause a reasonable adult to suffer substantial emotional distress and must actually cause substantial emotional distress to the petitioner."

§455.010(1) and (1)(d) R.S.Mo.

Under Missouri's Adult Abuse Act and its provisions, "Stalking" is defined as follows:

> "when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:
>
> > (a) "Alarm" means to cause fear of danger of physical harm.
> > (b) "Course of Conduct" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may, include, but is not limited to, following the other person or unwanted communication or unwanted conduct;
> > (c) "Repeated" means two or more incidents evidencing a continuity of purpose."

§455.010(10)(a)-(c) R.S.Mo.

Under Missouri's Adult Abuse Act and its provisions, "[W]hen a law enforcement officer has probable cause to believe a party has committed a violation of law amounting to abuse or assault, as defined in section 455.010, against a family or household member, the officer may arrest the offending party whether or not the violation occurred in the presence of the arresting officer." §455.085.1 R.S.Mo. (in pertinent part). Furthermore, "[W]hen a law enforcement officer has probable cause to believe that party, against whom a protective order has been entered and who has notice such order entered, has committed an act of abuse in violation of such order,

the officer shall arrest the offending party-respondent whether or not the violation occurred in the presence of the arresting officer." 455.085.2 R.S.Mo. (in pertinent part). Finally, "[I]n an arrest in which a law enforcement officer acted in good faith reliance on this section, the arresting and assisting law enforcement officers and their employing entities and superiors shall be immune from liability in any civil action alleging false arrest, false imprisonment or malicious prosecution." §455.085.4 R.S.Mo. [8]

Police officers employed by the City of Crestwood are required to take 40-48 hours of continuing education every three years to maintain their certification. Akin Deposition, pg. 6; Paillou Deposition, pg. 6. The continuing education includes, but is not limited to, courses in legal studies, technical studies, and review of Missouri statutes and law. Akin Deposition, pg. 6; Paillou Deposition, pg. 6. There is no separate, specific training in connection with Missouri's Adult Abuse Act. Akin Deposition, pg. 6; Paillou Deposition, pg. 6.

### §1983 - False Arrest

Plaintiff contends that defendants Akin and McFarland violated his Fourth Amendment rights against unreasonable seizure by falsely arresting him. He contends that because no "Order of Protection" existed at the time of the arrests, Ms. Sastry made "false" claims against him, and that the defendant police officers failed to "investigate" her claims, the defendant police officers did not have probable cause to arrest him. He further contends that the later expungement of the subject arrests proves that no probable cause existed to make the arrests initially.

Defendants contend that probable cause existed to make the arrests because 1) both officers reasonably believed at the time that a viable "Order of Protection" existed and that plaintiff had violated that order; and 2) even if a viable "Order of Protection" did not exist at the time of the arrests, plaintiff's conduct constituted violation(s) of Crestwood's harassment ordinance and Missouri's adult abuse and/or harassment laws. They further contend that they are entitled to qualified immunity and/or official immunity for the arrests. Finally, they contend that

---

[8]The Court takes judicial notice of the existence of these statutes and ordinance(s) during the relevant time-period.

the later expungement of the arrests is not evidence that probable cause was lacking when making the arrests initially.

A §1983 false arrest claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures. An arrest is a "seizure" as defined by the Fourth Amendment. United States v. Watson, 423 U.S. 411, 428 (1976). "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 593 (2004)(internal citations omitted). Whether the defendant police officers had probable cause at the times of plaintiff's arrests is a question of law for a court to decide. Fisher v. Wal-Mart Stores, Inc., 619 F.3d. 811, 816 (8th Cir. 2010); Peterson v. City of Plymouth, 60 F.3d. 469, 475 (8th Cir. 1995).

> "An officer has probable cause to make a warrantless arrest
> when the facts and circumstances are sufficient to lead a
> reasonable person to believe that the defendant has committed
> or is committing an offense. To determine the existence of
> probable cause, we look at the totality of the circumstances as
> set forth in the information available to the officers at the time
> of arrest. As probable cause is determined at the moment the
> arrest was made, any later developed facts are irrelevant to the
> probable cause analysis for an arrest. [O]fficers are generally
> entitled to rely on the veracity of information supplied by the
> victim of a crime."

Fisher, at 816-17; Reed v. LaNasa, et. al., 2011 WL 1630898, *3 (D.Minn. April 29, 2011); *see also*, McCabe v. Parker, et. al., 608 F.3d. 1068, 1077-78 (8th Cir. 2010).

"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." Green v. State of Missouri, 734 F.Supp.2d. 814, 832 (E.D.Mo. 2010)(*quoting* Brinegar v. United States, 338 U.S. 160, 175 (1949)). "A reasonable ground for belief means more than bare suspicion, but less than evidence which would justify condemnation or conviction." Baribeau v. City of Minneapolis, 596 F.3d. 465, 474 (8th Cir. 2010); Green v. State of Missouri, at 832; Reed v. LaNasa, at *3.

An officer's subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. Devenpeck v. Alford, 453 U.S. at 153. Thus, a law officer may effect a warrantless arrest, even if there is no lawful basis for the actual charges brought, as long as there is probable cause to believe some criminal offense had been committed. McCabe v. Parker, at 1077-78 *citing* Devenpeck v. Alford, *supra*; Lingo v. Burle, 2008 WL 2787703, *6 (E.D.Mo. July 15, 2008)(*citing* Devenpeck v. Alford*, supra.* for the proposition that "if the facts and circumstances within [defendant police officers] knowledge were sufficient to warrant a prudent person in believing plaintiff had committed or was committing an offense, even if that offense was not the offense actually invoked at the time of the arrest, they had probable cause to arrest [the plaintiff]").

In the instant case, the defendant officers had oral and written statements from the victim clearly stating that she had been threatened by the plaintiff over the phone, and by his conduct while driving. When interviewed by the defendant officers, the victim was visibly upset and frightened by the acts of the plaintiff. The victim clearly expressed her fear of physical harm by the plaintiff due to his actions. The defendant officers were aware of at least one prior arrest of the plaintiff for domestic violence at the time of the subject arrests.

Both defendant officers were informed by their dispatcher that an "ex parte order of protection" existed at the time of the arrests, both officers were shown an "Interim Order" which provided for protection of the victim from the plaintiff; and both officers saw the same orders in the dispatch book and were unaware that the "ex parte order" had been cancelled. Plaintiff argues that had the defendant officers "properly investigated" the existence of a viable "Order of Protection", they would have not arrested him. "[O]fficers are not required to conduct a `mini-

17

trial' before arrest . . ." <u>Fisher</u>, at 817 *quoting* <u>Armine v. Brooks</u>, 522 F.3d. 823, 832 (8th Cir. 2008); *see also*, <u>Royster v. Nichols</u>, 2010 WL 5067605, *8 (W.D.Mo. December 6, 2010).

Viewing the evidence provided by the parties, and in consideration of the "totality of the circumstances" including facts known to the defendant officers at the time of their respective arrests, the Court finds that probable cause existed for both arrests. Contrary to the plaintiff's assertion that the defendant officers should have investigated Ms. Sastry's "false claims", and in essence, believe his statements over her statements, it was reasonable for the officers to find Ms. Sastry's account of the events leading up to the plaintiff's arrests to be credible. The officers were aware of a history of abuse directed to Ms. Sastry by the plaintiff, and she was visibly distraught and fearful when providing her accounts of the events. It was further reasonable for the officers to believe that a viable "Order of Protection" existed since this is what their own dispatcher told them, Ms. Sastry provided copies of court orders which did set out restrictions on the plaintiff's conduct toward Ms. Sastry, and their own dispatch books had copies of these orders. The defendant officers had reasonably trustworthy information to believe that plaintiff had, by his actions, violated an "Order of Protection" subjecting him to arrest.

Even if a judicial "Order of Protection" did not exist at the time of the arrests, probable cause still existed for making the arrests. Plaintiff has not offered any argument that the conduct reported by Ms. Sastry was not unlawful both under Missouri laws and City of Crestwood ordinance(s). Ms. Sastry reported harassing and threatening conduct by the plaintiff, she was fearful of the plaintiff, she was visibly upset by his actions, and there was a past history of abuse by the plaintiff. Such conduct meets the requirements of Missouri's harassment and/or Adult Abuse Act, and Crestwood's ordinances on harassment. If an officer has probable cause to believe that an individual has committed even a minor criminal offense, a warrantless arrest may be made without violating the Fourth Amendment. <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 354 (2001); <u>Baribeau</u>, at 474; <u>Green v. Missouri</u>, at 832.

As for the later expungement of his arrest records, this is not probative on the issue of probable cause. "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have

amassed enough evidence to justify a conviction prior to making a warrantless arrest." <u>United States v. Mendoza</u>, 421 F.3d. 663, 667 (8th Cir. 2005). Probable cause is review of the "totality of the circumstances" at the time of the arrest(s), not looking back at the arrests with 20/20 hindsight. Furthermore, Section 610.126.1 R.S.Mo. states that "[a]n expungement of an arrest record shall not reflect on the validity of the arrest and shall not be construed to indicate a lack of probable cause for the arrest." Section 610.126.3 states that "[t]he petitioner shall not bring any action subsequent to the expungement against any person or agency relating to the arrest described in the expunged records. Thus, plaintiff may not rely upon the later expungement of the arrests to prove that probable cause did not exist at the time of the arrests.

Finally, plaintiff appears to argue that the defendant officer's "motive" for making the arrests should be relevant to the probable cause inquiry.[9] This argument is meritless. Plaintiff has provided no evidence whatsoever that some "ulterior motive" prompted the arrests. He does nothing more than speculate that Ms. Sastry has had or presently has a personal relationship with an unidentified Crestwood police office. He fails to identify any officer which he believes has a romantic relationship with Ms. Sastry; and Ms. Sastry and the defendant officers deny, under oath, any personal relationship.[10] Such conjecture fails to show that any dispute of a material fact exists regarding the existence of probable cause for the arrests.[11] *See*, <u>Hannah v. City of Overland</u>, 795 F.2d. 1385, 1390 (8th Cir. 1986)(if probable cause to exists based upon the objective reasonableness standard, "the subjective motivations of the arresting police officers are irrelevant.").

---

[9]Plaintiff raises the specter of an illicit motive based on his belief that a personal relationship between Ms. Sastry and one or more Crestwood Police Officers existed. in his complaint. Plaintiff's Complaint, ¶15.

[10]Ms. Sastry, under oath, denies any personal relationship with any Crestwood police officer. Melissa Sastry Deposition, pg. 13.

[11]Furthermore, the plaintiff's remarks concerning 1) failure to allow him a phone call when held overnight pursuant to the January 31, 2009 arrest; and 2) some unidentified officer calling plaintiff a "sand nigger" while being held overnight pursuant to the January 31, 2009 arrest to be totally irrelevant to the claims asserted in the Complaint, and are nothing more than inflammatory and prejudicial remarks that have no value for the Court's consideration of the claims asserted in the Complaint. Plaintiff's Complaint, ¶¶26 and 27.

Having found that no material issue of fact exists, and that the defendant officers Akin and McFarland had probable cause to arrest plaintiff on January 31, 2009 and April 22, 2009, summary judgment will be granted to all defendants. Furthermore, because the Court finds that the defendant officers had probable cause to arrest the plaintiff, it is not necessary to determine whether qualified immunity shields the officers.[12]

### §1983 - False Imprisonment

Under Missouri law, "[f]alse imprisonment, also called false arrest, is the confinement, without legal justification, by the wrongdoer of the person wronged." Highfill v. Hale, 186 S.W.3d. 277, 280 (Mo. 2006); see, Gibbs v. Blockbuster, 318 S.W.3d. 157, 168-69 (Mo.App. 2010)(quoting Highfill, supra.). The elements of a cause of action for false imprisonment are 1) the detention or restraint of one against his will, and 2) the unlawfulness of such detention or restraint. Gibbs, at 169.[13] A police officer "who arrests someone with probable cause is not liable for false arrest/false imprisonment because the innocence of the suspect is later proved." See, Hannah, at 1389; Highfill, at 282; see also, Griffin v. Walgreen Co., 2010 WL 4975532, *11 (E.D.Mo. December 2, 2010); CLD through next friend Dixon v. Boyd, III., 2010 WL 1838408, *4 (E.D.Mo. May 6, 2010); Lingo, at *7.

Since the defendant officers had probable cause to arrest the plaintiff on both occasions, neither "detention" constitutes a false imprisonment. Furthermore, the later expungement of his

---

[12]Briefly, the defendant officers would be entitled to qualified immunity because all that is required is "arguable probable cause". Baribeau, at 478; Armine, at 832 . These defendants are entitled to qualified immunity "if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Baribeau, at 478 quoting Armine, at 832. The victim's statements, her demeanor, their own dispatch providing information that an "ex parte order" was in effect, copies of court orders setting forth plaintiff's restrictions regarding his conduct towards the victim, and prior abuse history establish arguable probable cause for qualified immunity purposes. In this same vein, having found that the defendant officers had probable cause to arrest the plaintiff, had arguable probable cause for qualified immunity purposes, there is no reason to discuss whether these defendants are also protected by the doctrine of official immunity.

[13]Plaintiff claims that a "material issue of fact" is in dispute because defendant McFarland testified that plaintiff was not held in a jail cell while detained at the Crestwood police station following his arrest; while plaintiff claims he was held in a jail cell. This is not a "material issue" in connection with plaintiff's false imprisonment claim because whether or not he was actually held in a cell does not deter from the fact that he was detained at the police station following his arrest. This constitutes a "detention" for purposes of a false imprisonment claim.

arrest records does not alter this finding. Defendants are entitled to summary judgment on Count II of the plaintiff's complaint.

## Fourteenth Amendment

It is unclear from the plaintiff's complaint and his pleadings in connection with both summary judgment motions as to whether he is also promoting a separate Fourteenth Amendment due process claim. Plaintiff's false arrest and false imprisonment claims are analyzed under the Fourth Amendment; and as the Court has explained, the defendants are entitled to summary judgment on these claims because they had probable cause to arrest the plaintiff. Since these Fourth Amendment claims are analyzed under an objective reasonableness standard, a substantive due process claim cannot be based on the allegations of false arrest/false imprisonment. *See*, Smithson v. Aldrich, 235 F.3d. 1058, 1064 (8th Cir. 2000); Reed v. LaNasa, at *5. Furthermore, plaintiff has failed to plead specific facts to support a procedural due process claim. Therefore, to the extent that plaintiff's Counts I and II are based on vague allegations of the deprivation of due process, summary judgment is granted to the defendants.

## §1983 - Municipal Liability

Plaintiff also brings his claims as contained in Counts I and II against the City of Crestwood. It would appear that he primarily holds the City responsible for the acts of defendants Akin and McFarland as their employer. A municipality cannot be held vicariously liable under §1983 on a theory of *respondeat superior*. Monell v. Dept of Social Services, 436 U.S. 658, 691 (1978). To the extent that plaintiff is seeking summary judgment against the City on a municipal custom or policy theory, such a claim must fail because in light of the plaintiff's failure to demonstrate individual liability of the defendant officers. In order for municipal liability to attach, individual liability must be found on the underlying substantive claim. McCoy v. City of Monticello, 411 F.3d. 920, 922 (8th Cir. 2005); Moore v. City of Desloge, 692 F.Supp.2d. 1122, 1127 (E.D.Mo. 2010)(*citing* McCoy v. City of Monicello, *supra.*).

Furthermore, nowhere in his complaint does the plaintiff plead an unconstitutional policy or custom by defendant City which gave rise to the alleged unlawful arrests/imprisonments. For the first time in his motion for summary judgment the plaintiff appear to set forth his claim

against the City.  He appears to contend that the City's policy (or actually lack of policy) regarding mandatory officer training on Missouri's Adult Abuse Act "caused Officers Akin and McFarland to violate Mr. Sastry's Constitutional Rights."  Plaintiff's Memorandum in Support of Motion for Summary Judgment [18], pgs. 6-7.  This essentially amounts to a "failure-to-train" claim.

Liability under §1983 for a governmental entity must be based upon a "custom or policy" that causes the constitutional deprivation.  <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-94 (1978); <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d. 648 (8th Cir. 2007); <u>Granda v. City of St. Louis</u>, 472 F.3d. 565, 568 (8th Cir. 2007).  The unconstitutional act(s) of the employee must have been in furtherance of or knowingly ignored pursuant to a custom or policy sanctioned or ordered by municipal officials having final policymaking authority. Municipal liability may also be established by showing that an alleged unconstitutional act is so pervasive among non-policymaking employees of the municipality so "as to constitute a custom or usage with the force of law."  <u>Granda</u>, at 568 *quoting* <u>Kuha v. City of Minnetonka</u>, 365 F.3d. 590, 603 (8th Cir. 2003). Liability will not attach simply because the municipality employs the alleged tort-feasor.  <u>Monell</u>, 436 U.S. at 694.

"Municipal officials who have final policymaking authority may, by their actions, subject the government to Section 1983 liability."  <u>Russell v. Hennepin County</u>, 420 F.3d. 841, 846 (8th Cir. 2005) *quoting* <u>Angarita v. St. Louis County</u>, 981 F.2d. 1537, 1546, (8th Cir. 1992)( *citing* <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 121-22 (1988)).  Although proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, *see*, <u>Davison</u>, *supra.*, *citing* <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985), "an unconstitutional government policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business."  <u>Davison</u>, *supra.*, *quoting* <u>Praprotnik</u>, 485 U.S. at 123; *see*, <u>Angarita</u>, at 1546.

"A `policy' is a `deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible [under state law] for establishing final policy with respect to the subject matter in question."  <u>Russell</u>, at 847 *quoting* <u>Hayes v. Faulkner</u>

County, 388 F.3d. 669, 674 (8th Cir. 2004)(*quoting* Pembaur, 475 U.S. at 483-84). "A policy is deliberately indifferent to a person's constitutional rights when its inadequacy is both obvious and likely to result in the alleged deprivation of constitutional rights." Russell, at 847 (citation omitted).

If the alleged constitutional violator is not a "final policymaker", then liability may be established by showing that the alleged misconduct was so persistent among the rank-and-file employees of the municipality as to constitute a "custom" with the "force of law". "A municipality custom is a practice of municipal officials that is not authorized by written law, but which is `so permanent and well-settled . . . as to [have] the force of law." Russell, at 849 *quoting* Harris v. City of Pagedale, 821 F.2d. 499, 504, n.7 (8th Cir. 1987)(*quoting* Monell, 436 U.S. at 691). In order to establish a constitutional violation resulting from a municipal custom, a plaintiff must show that his/her alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized. Russell, at 849 *citing* Larson v. Miller, 76 F.2d. 1446, 1453 (8th Cir. 1996).

Here, plaintiff has failed to set forth any facts demonstrating that anyone within the City's government promulgated or articulated an official policy of intentionally not training police personnel to recognize the differences among the court orders that may be issued pursuant to Missouri's Adult Abuse Act. He has failed to set forth any facts that any government policy was promulgated which did not require specific training in connection with Missouri's Adult Abuse Act.

Plaintiff has failed to show that the defendant officers, as well as any other Crestwood police officers were engaging in "widespread and persistent pattern of unconstitutional conduct **[i.e., arresting individuals for violating non-existent Orders of Protection]** which City officials were either "deliberately indifferent' or "tacitly approved". The evidence before the Court clearly establishes that there were no other complaints against the defendant officers or any other Crestwood police officer for arresting individuals for violating non-existent Orders of

Protection.  He has not offered any evidence that any Crestwood municipal officer was aware of Crestwood police officers arresting individuals for violating non-existent Orders of Protection prior to January 31, 2009.  All plaintiff has shown is that two non-policymaking police officers, four months apart, allegedly engaged in a similar unconstitutional act, not taken in furtherance of any known Municipal policy.  At best, plaintiff has shown conduct that may rise to the level of negligence, but it does not establish causation sufficient to support a claim of municipal liability under §1983.

In order to prove a claim of municipal liability against the City for failure to properly train, instruct, and or control the defendant officers,  plaintiff Sastry must provide evidence that the municipality had notice that its police training was inadequate and deliberately chose not to remedy the situation, or that it was deliberately indifferent to a continuing, widespread, persistent pattern of unconstitutional misconduct.  Robinson v. City of St. Charles, Mo., 972 F.2d. 974, 976-77 n.2 *(8th Cir. 1992) citing* Thelma D., 934 F.2d. at 932-35 (8th Cir. 1991).  In order to impose liability on a "failure-to-train' theory, a plaintiff must show that the government entity's lack of training amounts to deliberate indifference to the rights of the public who come in contact with the government entity's employees; that a deliberate choice was made regarding this lack of adequate training; that it would have been obvious to reasonable decision-makers that this lack of adequate training would result in constitutional violations; and that there was a causal connection between this lack of training and the plaintiff's injury.  Canton v. Harris, 489 U.S. 378 (1989).  A plaintiff can show deliberate indifference from evidence of decisionmakers' continued adherence to a training program they knew or should have known to be deficient in preventing employees' unconstitutional conduct.  Ward v. City of Des Moines, 184 f.Supp.2d. 892, 898 (S.D.Iowa 202) *citing* Brown, 520 U.S. at 407-08;  Bird v. Jefferson County Sheriff's Dept., 2009 WL 804063,*6-*7 (E.D.Mo. 2009) *aff'd in part, rev'd in part on other gds* 363 Fed.Appx. 425 (8th Cir. 2010). A plaintiff can also impose liability upon showing a pattern of tortious conduct by inadequately trained employees indicating a lack of proper training, as opposed to a single negligent administration of the training program.  Ward, at 898 *citing* Brown, 520 U.S. at 407-08; Bird, *supra.*; *see also*, Smith v Watkins, 159 F.3d. 1137, 1138-39 (8th Cir. 1998).  Finally, a

plaintiff can impose liability upon showing that "factors peculiar to the officer involved in the incident is the moving force behind the plaintiff's injury." Ward, at 898 *citing* Brown, 520 U.S. at 407-08; Bird, *supra.*; *see also*, Smith v. Watkins, at 1139.

Generally, an isolated incident of alleged police misconduct by subordinate officer(s) is insufficient to establish municipal liability. Wedemeier v. City of Ballwin, Mo., 931 F.2d. 24, 26 (8th Cir. 1991); *see also*, City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)(plurality); Patzner v. Burkett, 779 F.2d. 1363, 1367 (8th Cir. 1985).

Plaintiff has offered no evidence to support his general conclusion that the City failed to adequately train the defendant officers. There is no dispute that the defendant officers were certified pursuant to state requirements.[14] There is no dispute that both defendant officers had attended and completed the required hours of law enforcement continuing education courses. There is no dispute that these law enforcement continuing education courses included legal and Missouri statutory courses. Plaintiff has not set forth any evidence that these courses did not include coverage of the Missouri Adult Abuse Act. Finally, there is no dispute that the City had not received any prior complaints of misconduct by the defendant police officers or any other Crestwood police officer in connection with their training or lack of training specific to the Missouri Adult Abuse Act.

In light of the above findings, plaintiff's §1983 municipal liability claims in Counts I and II must fail as a matter of law.

### §1983 Conspiracy

In order to prevail on a §1983 conspiracy claim, a plaintiff must show 1) that the defendant conspired with others to deprive him of unconstitutional rights; 2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and 3) that the overt act injured the plaintiff. White v. McKinley, 514 F.3d. 807, 814 (8th Cir. 2008); Gunter v. Morrison, 497 F.3d. 868, 873 (8th Cir. 2007); Green v. State of Missouri, at 853; Riggs v. City of Owensville, 2011 WL 1743691, *6(B) (E.D.Mo. May 4, 2011); Brandon v. City of

---

[14]Sections 590.030-590.050 R.S.Mo. set out the basis requirements regarding the licensing of peace officers.

<u>Moline Acres</u>, 2010 WL 4287545, *2 (E.D.Mo. October 21, 2010). Additionally, the plaintiff must prove a deprivation of a constitutional right or privilege in order to prevail on a §1983 conspiracy claim. <u>White v. McKinley</u>, at 814 (internal citations omitted).

Furthermore, for a successful claim of conspiracy under §1983 a plaintiff

"need not show that each participant knew `the exact limits of the illegal plan . . .' but the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. `The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a `meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims.' Because `the elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided. The court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy.'"

<u>White v. McKinley</u>, at 817-18 (internal citations omitted).

Putting aside the fact that the Court has found no constitutional violation in the arrests and/or incarcerations of the plaintiff, the plaintiff has still offered no evidence whatsoever that the defendant officers, defendant Paillou, and defendant Robinson conspired to deprive him of his constitutional rights. There is absolutely no evidence of any "meeting of the minds" to allegedly violate plaintiff's Fourth Amendment rights by arresting him without probable cause. The summary judgment record shows that defendants Akin and McFarland never spoke to each other during the relevant time-period; i.e they never spoke to each other prior to the later April 21, 2009 incident. Akjn Deposition, pgs. 23-24; McFarland Deposition, pg. 16. Defendant McFarland's only connection to the prior arrest by defendant Akin was to pull a copy of the Interim Order out of the prior report filed by Akin. McFarland Deposition, pg. 25-26. There is no evidence whatsoever before this Court that either defendant Akin or defendant McFarland individually or separately spoke about arresting plaintiff in violation of his Fourth Amendment rights to either or both defendants Paillou and/or Robinson. It is undisputed that defendant Paillou does not normally review arrest reports, and although he has access to all police reports, he does not review them daily. Paillou Deposition, pgs. 5, 8. Defendant Paillou's only direct

involvement was in deciding not to apply for a warrant for defendant McFarland's arrest of the plaintiff. Paillou Deposition, pgs. 17-18. He made this decision because of the plaintiff's lawsuit against the City of Crestwood. Paillou Deposition, pgs. 17-18. Defendant Paillou was advised of this decision by "command staff" but could not recall any particular command officer who advised him not to pursue an application for an arrest warrant against plaintiff. McFarland Deposition, pg. 18. Finally, there is no evidence whatsoever of any personal involvement with the arrests and/or incarcerations of the plaintiff by defendant Robinson, much less any evidence whatsoever of any connection between defendant Robinson and the other individual defendants.

All plaintiff has is speculation and conjecture about a conspiracy. "Speculation and conjecture are not enough to prove that a conspiracy exist[ed]." Green v. State of Missouri, at 853 *quoting* Mettler v. Whitledge, 165 F.3d. 1197, 1206 (8th Cir. 1999). Plaintiff simply has failed to set forth any affirmative evidence upon which any reasonable jury could find that the individual defendants had a "meeting of the minds" to violate the plaintiff's Fourth Amendment rights. Summary judgment will be granted to the defendants on plaintiff's Count III §1983 conspiracy claim.

### Missouri civil conspiracy

The elements of a civil conspiracy under Missouri law include: 1) two or more persons; 2) with an unlawful objective; 3) after a meeting of the minds; 4) committed an least one act in furtherance of the conspiracy; and 5) the plaintiff was injured. Rice v. Hodapp, 919 S.W.2d. 240, 245 (Mo. 1996); Green v. State of Missouri, at 854 *citing* Rice, *supra.,*; Brandon v. City of Moline Acres, at *2 *citing* Rice, *supra.* As with a §1983 conspiracy, a plaintiff must still prove an underlying wrongful act or tort. Green v. State of Missouri, at 854 *citing* Williams v. Mercantile Bank of St. Louis, NA, 845 S.W.2d. 78, 85 (Mo.App. 1993) and Chmieleski v. City Products Corp., 660 S.W.2d. 275, 286 (Mo.App. 1983). Thus, again as with a §1983 conspiracy, a plaintiff must show "a meeting of the minds" to deprive the plaintiff of some constitutional, statutory, or common law right.

The Court's analysis and review of the plaintiff's §1983 conspiracy claim is equally applicable to his Missouri civil conspiracy claim. Plaintiff has offered no evidence whatsoever

that any individual defendant came to a meeting of the minds with any other defendant (or any other person) to commit any unlawful act against the plaintiff. There simply is no evidence before this Court which would enable any reasonable jury to find that a civil conspiracy under Missouri law existed during the relevant time-period. Summary judgment will be granted to the defendants on plaintiff's Missouri civil conspiracy claim as contained in Count IV of the plaintiff's complaint.

In summary, the Court finds no disputed material issues of fact from which any reasonable jury could find in the plaintiff's favor on his claims as contained in his complaint, and that as a matter of law, defendants are entitled to summary judgment on all claims as contained in Counts I, II, III, and IV of the plaintiff's complaint.

Dated this 19th day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE

.